MORGAN, LEWIS & BOCKIUS LLP
JOHN H. HEMANN, State Bar No. 165823
STEPHANIE L. JOHNSON, State Bar No. 246073
JASON B. ALLEN, State Bar No. 251759
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail: jhemann@morganlewis.com
          stephanie.johnson@morganlewis.com
          jason.allen@morganlewis.com

Attorneys for Defendant
VINAYAK S. GOWRISH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>VINAYAK S. GOWRISH,<br><br>　　　　　　　Defendant. | Case No. CV 09-5883 (SI)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS**<br><br>Hearing Date: January 20, 2011<br>Time:　　　　3:30 p.m.<br>Courtroom:　 10, 19th Floor<br>Judge:　　　 Hon. Susan Illston<br><br>Trial:　　　　January 24, 2011 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                                                                                         (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO
DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

## I. INTRODUCTION

At issue in the SEC's Motion *in Limine* No. 1 are the following: two letters sent by the Veterans' Administration to the "Witness"[1] finding him to be 100% disabled; testimony by the Witness regarding his alleged disability and the reporting of that disability to the SEC; and testimony by several witnesses regarding the Witness's excessive use of cocaine and alcohol during the time period relevant to this case.

The SEC seeks to exclude this evidence on the basis of relevance, prejudice, and hearsay. The SEC's motion should be denied. This evidence is directly relevant to the credibility of the SEC's principal witness. The evidence is critical to the jury's assessment of the Witness's credibility and the defendant has the right to cross-examine the Witness on this evidence. The SEC's positions are without legal precedent and the defense should be permitted to cross-examine the Witness on these matters without restriction.

## II. FACTUAL BACKGROUND

As part of his effort to persuade the SEC that he was not able to disgorge more than 10% of the profits from the insider trading scheme he and Adnan Zaman operated, the "Witness" submitted to the SEC a letter from the Veterans' Administration ("VA") finding him to be 100% disabled from maintaining employment. The letter, dated April 12, 2004 (approximately two and a half years before the first of the securities trades at issue in this case), says that the VA found the Witness to be completely disabled, with 50% of that disability owing to "cognitive disorder" and the remaining 50% due to a variety of alleged physical ailments. Regarding the "cognitive disorder," the VA found in part as follows:

> On VA examination March 2004, your Global Assessment of Function was 50. . . . You were oriented to time, place, person, and purpose. Short term memory was slightly impaired. Long term memory was intact. Attention was slightly impaired. Major

---

[1] For purposes of this brief, we will follow the SEC's convention and refer to the witness at issue as the "Witness." However, we believe that this is entirely unnecessary. This witness is a voluntarily cooperator in a government enforcement action and will be the SEC's principal witness at trial. He is responsible for the insider trading scheme, profited most handsomely from it, and offered his cooperation in order to avoid criminal prosecution and to obtain a substantial monetary deal from the SEC. It is difficult to identify an appropriate constitutional basis for shielding his identity from the public record.

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/22138421.2                                    1                                    (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

| | |
|---|---|
| 1 | depression was diagnosed. You report feeling sad and fatigued, with no energy or motivation. You cry frequently. At one unspecified point, you felt that life was not worth living. |
| 2 | |
| 3 | . . . . |
| 4 | The current 50 percent evaluation is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. |

Exhibit A at 4. In addition, the VA found that the Witness is 20% disabled as a result of cervicalgia, 10% disabled as a result of a deviated septum, and 10% disabled as a result of "tender scars, scalp, and forehead." Exhibit B at 2.

Armed with this, the Witness has not been employed since at least 2004, and has received a monthly payment of, now, approximately $3,000 from the VA. When it came time to settle with the SEC, the Witness provided the SEC with the VA letters and said that he could not pay back more than a tiny percentage of the more than $318,000 in profits that resulted from the insider trading scheme in which he participated. (The Witness, of course, had already spent or lost the money he got from the trading.) The SEC did nothing, apparently, to determine whether the Witness was actually disabled before accepting his representation.

We did. The "disabled" person described in the VA letters and sponsored/defended by the SEC is a far cry from the person the Witness really is. According to posts on the Witness's Facebook page (at least some of which he deleted immediately after he received a subpoena in this case), the Witness leads an active and full social life. His Facebook page is replete with posts regarding working out in the gym, high-intensity physical activities, going to clubs and sporting events, and international travel. Just a few (of many) examples:

- August 13, 2008: "[Witness] is going wake boarding tomorrow!!"

- August 18, 2008: "[Witness] is in Japan, so many little asian people running around. haha!"

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                                  2                                  (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

- April 14, 2009: "[Witness] is going for a swim, i'm hard core i don't care if it's freezing outside!!!"

- July 15, 2009: "[Witness] is going out on the boat today, the weather is amazing!!!"

- August 31, 2009: "[Witness] is heading to Ko Samui Thailand tomorrow. Full Moon party here I come!!!"

- October 19, 2009: "[Witness] is heading to the gym, I hate cold weather!!!!"

- December 20, 2009: "[Witness] is obsessed with raquetball anyone down to play?"

- April 13, 2010: "[Witness] Just landed in Jamaica, off to the Ritz to check in!!!"

- April 16, 2010: "[Witness] is going to go horseback riding on the beach today, should be fun!!!"

- April 18, 2010: "[Witness] is off the [sic] the gym for one last work out and steam at the amazing gym in resort before checking out!!! The cold plunge bath is Amazing!!! Wakes your ass up!!!"

On his Friendster page, the Witness listed his hobbies as weightlifting and swimming. According to his MySpace page, the Witness describes himself as "athletic" and says he was earning between $150,000 and $250,000 a year. Photographs posted by the Witness and his friends in various places on the internet show him traveling, at clubs, and, in general living an active, fun, seemingly carefree life – all without the need to work because of his aforementioned "disability" and the generosity (or gullibility) of Uncle Sam.

But that is not all. There will be testimony from other witnesses that throughout the time relevant to the alleged insider trading scheme, the Witness was a frequent user of cocaine and abuser of alcohol. Indeed, when asked in deposition to identify the number of people with whom he had used cocaine, the Witness testified that he could not because they were so "numerous." Exhibit C (8/25/10 Deposition of "Witness") at 124:6-13.

### III. ARGUMENT

The Witness's cognitive disability and drug abuse are relevant and admissible because they bear directly on his credibility, in at least three respects: (1) mental illness, if legitimate, is relevant to credibility; (2) the Witness appears to have lied about his disability, given that there is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                                    3                                    (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO
DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

1  a mountain of evidence that shows that he lives an active and unimpaired life; and (3) the

2  Witness's routine drug and alcohol use, including at the time directly relevant to this case, has

3  impaired his ability to perceive and recall accurately what transpired.

4        This Witness is not just any witness, he is the SEC's "principal witness." *See* Letter from

5  James Kidney, dated December 6, 2010, at p. 2 (Dckt No. 62) ("There is no reason to deny the

6  Commission's principal witness equal access to notes of his own prior statements").  He alone

7  claims that Mr. Gowrish was involved in the insider trading scheme alleged by the SEC, and his

8  testimony is contrary to both Mr. Gowrish's and Adnan Zaman's.  The trial will, largely, be about

9  the Witness's credibility and the defendant is entitled to have the jury informed of the various

10  reasons why it should consider the Witness's testimony against Mr. Gowrish with great caution.

### A.    Legal Standards

12  "A clinical history of mental illness is probative of the credibility of the witness."

13  *Chnapkova v. Koh*, 985 F.2d 79, 81 (2d Cir. 1993), *citing United States v. Butt*, 955 F.2d 77, 82

14  (1st Cir. 1992); *United States v. Lindstrom*, 698 F.2d 1154, 1160-61 (11th Cir. 1983); Henry

15  Weihofen, *Testimonial Competence and Credibility*, 34 Geo. Wash. L. Rev. 53, 82 (1965).  As

16  one court of appeals observed, "even those who would limit the availability of psychiatric

17  evidence acknowledge that many types of 'emotional or mental defect may materially affect the

18  accuracy of testimony . . . .'"  *Lindstrom*, 698 F.2d at 1160, *quoting* Juviler, Psychiatric Opinions

19  as to Credibility of Witnesses: A Suggested Approach, 48 Cal.L.Rev. 648, 648 (1960).

20        The cases are legion in which courts have found that mentally impaired witnesses are

21  competent to testify, but that their mental disabilities and/or drug abuse are relevant to the

22  witness's credibility.  See, *e.g., United States v. Alperin*, 128 F. Supp. 2d 1251, 1255 (N.D. Cal.

23  2001) (ordering production of psychological records because of their relevance to credibility of

24  "the government's key witness" who would provide the "principal testimony against the

25  defendant"); *United States v. Blankenship*, 923 F.2d 1110, 1116 (5th Cir. 1991) (witness's

26  hallucinations due to drug use affected credibility); *United States v. Phibbs*, 999 F.2d 1053, 1070

27  (6th Cir. 1993) (because witnesses were capable of understanding their oath and obligation to

28  testify truthfully and were able to perceive or describe events, any mental impairments went to

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/22138421.2     4     (CV 09-5883 SI)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO
DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

1   their credibility rather than their competence); *United States v. Eschweiler*, 745 F.2d 435, 438

2   (7th Cir. 1984) (government witness who lied repeatedly, hallucinated, and abused drugs not

3   incompetent; unreliability was issue for jury); *Andrews v. Neer*, 253 F.3d 1052, 1062-1063 (8th

4   Cir. 2001) (witness's status as involuntarily committed schizophrenic at time of testimony did not

5   disqualify him from testifying; mental illness is ground for impeachment, so long as trial court is

6   properly satisfied witness has ability to testify truthfully); *United States v. Ramirez*, 871 F.2d 582,

7   584 (6th Cir. 1989) (in drug conspiracy case, the fact that a witness used drugs or was a drug

8   addict at the time of the events leading to trial went to credibility of the witness, not competency).

9         The SEC's motion is devoid of legal authority for its argument that evidence of the

10   Witness's mental disability should be excluded at trial, and it has no answer for the cases that

11   clearly permit such evidence for the purpose of attacking a witness's – indeed the *principal*

12   witness's – credibility. Instead, the SEC claims that the defense intends to pick on a disabled

13   person and, in doing so, create a time-consuming sideshow. These arguments are not only

14   unsupported by any authority, they ignore entirely the facts set forth above, and the various bases

15   for admitting the evidence.

16         **B.**    **If truly disabled, the evidence is relevant to the Witness's credibility.**

17         As set forth, above, federal courts have held repeatedly that both mental disability and

18   drug abuse are probative of a witness's credibility. Here, the VA found the Witness to be 50%

19   disabled based upon, among other things, "difficulty in understanding complex commands;

20   impairment of short- and long-term memory (e.g., retention of only highly learned material,

21   forgetting to complete tasks); impaired judgment." These characteristics are directly relevant to

22   the Witness's credibility as a witness – they impact his ability to remember the events at issue in

23   the case, his ability to understand his role as a witness (rather than an advocate for the SEC's

24   position), his comprehension of and ability to follow the terms of his deferred prosecution

25   agreement, his decision to cooperate with the government, and his judgment as to whether to tell

26   the truth in these proceedings.

27         The SEC contends that some sort of expert testimony is necessary to support the

28   conclusions of the VA because, without such testimony, the jury is likely to be confused. The

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2          5      (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO
DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

SEC, however, cites not a single case in support of this assertion, and no such case appears to exist. The SEC was, of course, free to explore the Witness's mental condition with the assistance of a doctor, but chose not to. The VA's conclusions are crystal clear and speak for themselves and, evidently, have been fully accepted by the Witness, who has accepted the resulting benefits without complaint. The SEC's argument goes not to the admissibility of the evidence, but to its weight, which they are free to argue in any way they choose.

The SEC suggests that the information on which the defense relies is too dated to be reliable. To this there are three responses: (1) the Witness remains 100% disabled, according to the VA and continues to receive a full disability payment; (2) in 2009 the Witness used the April 14, 2009, letter from the VA to persuade the SEC to find that he was unable to disgorge his illegal profits; and (3) the SEC opposed defendant's request for a trial subpoena to obtain updated records from the VA, which would have provided more current information.

Finally, without analysis or authority, the SEC contends that the VA letters are hearsay and should not be admitted. The VA letters, however, are public records and fall under the hearsay exception in Rule 803(8). Rule 803(8) provides:

> (8) **Public records and reports**. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless theسsources of information or other circumstances indicate lack of trustworthiness.

The Witness received the letters from the VA and produced them to the SEC in negotiating his settlement with the SEC. They are admissible.

### C. The evidence is relevant to the Witness's credibility because it tends to show that the Witness lied to the SEC in this case and to the VA separate and apart from this case about being disabled.

As the SEC points out in its opening brief, at least one witness, Adnan Zaman, will testify that he never perceived the Witness to be disabled. And, as set forth above, the Witness has engaged in myriad social and physical activities over the years that are flatly contrary to the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                                6                                (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

behavior of a person so disabled that he is unable to obtain or keep employment (e.g., horseback riding on the beach in Jamaica). It would be fair, in this case, for the jury to conclude that the Witness is really not disabled at all. This, too, is relevant to his credibility.

First, in 2009 the Witness represented to the SEC, by providing the SEC with the very same VA letters at issue here, that he was 100% disabled and, thus, unable to disgorge more than a small percentage of the total proceeds of his illegal trading activity or to pay any penalty for the illegal conduct he admitted. As it turned out, the Witness was required to disgorge only approximately 10% of the total illegal proceeds. As set forth above, while the Witness was taking this position with the SEC, he was traveling the world, engaging in strenuous physical activities, going to clubs, restaurants, and sporting events, and generally enjoying life. He simply chose not to work. The Witness's false representations to the SEC about his ability to pay in connection with this very case are relevant to his credibility.

Second, since 2004 the Witness has been receiving monthly disability checks from the VA based on the VA's disability determination. He has falsely represented to the VA that he suffers from a variety of disabling conditions, including mental disability, and that he is unable to obtain or keep employment. Rule 608(b) permits parties to cross-examine witnesses regarding specific instances of conduct that are probative of truthfulness or untruthfulness.[2] The Witness's false statements to the VA and his receipt of monthly 100% disability checks – which are part of a larger pattern of false statements to prospective employers, in loan applications, on web-pages, and to other audiences – may be inquired into on cross-examination because they are probative of his character for truthfulness.

The SEC is expending significant effort to keep the jury from learning the truth about its

---

[2] Rule 608(b) provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                                7                                (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS

1  star Witness. The truth is that its Witness is a recalcitrant liar in every aspect and endeavor of his
2  life. The defense has the right to expose the Witness for who he is – especially as it relates
3  directly to the deal the Witness negotiated with the SEC to resolve the insider trading claims about
4  which he is now testifying.

### D. The drug use evidence is relevant to the Witness's ability to recall and recount the events from the relevant time period.

At least two witnesses, Mr. Gowrish and Mr. Zaman, will testify that the Witness frequently used cocaine and drank to excess during the 2006-2007 timeframe that is relevant to this case. A third witness, David Garcia, will testify that the Witness was using drugs and alcohol to excess during a trip to Mexico about which the Witness may testify. The Witness himself is expected to testify that he drank frequently and used cocaine with people too "numerous" to recall.

There is no serious argument against the proposition that significant alcohol and drug use impacts the memory. The Witness's memory is one of the key issues in this case. The Witness will testify to a number of very specific events and occurrences that support the SEC's case. He will also testify that he cannot remember a great number of other events and occurrences that took place contemporaneously. Whether the Witness was under the influence of drugs or alcohol during relevant events and occurrences is probative of whether he can accurately remember and recount them years later or whether, as the defense contends, he fabricated them to please the SEC and to attempt to please the FBI and U.S. Attorney's Office.

## IV. CONCLUSION

For the reasons set forth above, The SEC's motion to exclude evidence regarding the Witness's alleged mental disability and drug and alcohol use should be denied.

Dated: January 4, 2011                    MORGAN, LEWIS & BOCKIUS LLP

                                          By        /s/ John H. Hemann
                                                 John H. Hemann

                                          Attorneys for Defendant
                                          VINAYAK S. GOWRISH

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22138421.2                            8                                     (CV 09-5883 SI)
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO BAR REFERENCE TO
DISABILITY OF A WITNESS AND TO PAST USE OF ILLEGAL OR PRESCRIPTION DRUGS