IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

S E C U R I T I E S   A N D   E X C H A N G E      No. C 09-05883 SI
COMMISSION,

         Plaintiff,

  v.

VINAYAK S GOWRISH,

         Defendant.
_____/

**INSTRUCTIONS TO JURY**

(**DRAFT FOR COUNSEL**)

**I.      NOTES TO COUNSEL:**

      On January 27, 2011, at the request of the Court, the parties filed First Amended Proposed Jury Instructions, which contained both agreed to and contested proposed jury instructions.  The key disagreements between the parties relates to the instruction on the elements of insider trading.

      The first disagreement is whether the jury must find that Mr. Gowrish owed a duty to his employer, or to the companies whose securities were traded.  There is a related dispute about whether an instruction should be given about what it means to be an "insider."  The second key disagreement is about how to instruct regarding scienter.  The parties disagree about (1) what Mr. Gowrish needed to know or believe about the tippee's (Zaman's) intent; and (2) whether to include a distinct element of acting "with the intent to defraud."

**A.      To whom Mr. Gowrish owes a duty**

There are (at least) two ways to proceed against a defendant in a civil prosecutions for fraudulent insider trading under the Section 10(b) of Securities and Exchange Act.  The first theory is the "classical" theory, where the SEC must prove that the defendant owed a duty to some party involved in the securities transaction, such as the corporation's shareholders, or that the defendant is a tippee of such a person.  *See SEC v. Clark*, 915 F.2d 439, 443 (1990).[1]  The second theory is the "misappropriation" theory.  *Id.* at 453.  Under the misappropriation theory, "an employee's knowing misappropriation and use of his employer's material nonpublic information regarding its intention to acquire another firm constitutes a violation of § 10(b) and Rule 10b-5."  *See id.*; *see also United States v. O'Hagan*, 521 U.S. 642 (1997) (approving of criminal prosecutions on the misappropriation theory).  For purposes of the misappropriation theory, it does not matter whether defendant owed a duty to the firm to be acquired or the shareholders of the firm to be acquired.  Rather, what matters is the defendant's duty to his employer.    The  SEC  is prosecuting Mr. Gowrish under the second, "misappropriation" theory.  This is clear both from its proposed instructions on the essential elements of the claim, and its rejection of defendant's proposed instructions.  Thus, the Court finds that the instructions should refer to Mr. Gowrish's duty to his employer, not his status as an "insider" of Sabre, TXU, or TPG.

**B.      Scienter**

The SEC proposes that the jury be instructed that it was impermissible for Mr. Gowrish to provide the material information "while knowing, or recklessly disregarding, that Mr. Zaman would trade, or tip others to trade . . . on the basis of that information."  Defendant argues that the instruction should state that the SEC must prove that Mr. Gowrish acted "with the expectation that Mr. Zaman

---

[1]      The Ninth Circuit describes this "classical" theory as follows:
a person violates Rule 10b-5 by buying or selling securities on the basis of material nonpublic information if (1) he owes a fiduciary or similar duty to the other party to the transaction; (2) he is an insider of the corporation in whose shares he trades, and thus owes a fiduciary duty to the corporation's shareholders; or (3) he is a tippee who received his information from an insider of the corporation and knows, or should know, that the insider breached a fiduciary duty in disclosing the information to him.
*Id.*

1    would trade . . . on the basis of that information."

2            Additionally, defendant argues that he is entitled to an instruction which includes, as a distinct

3    element of the claim, that he must have "acted knowingly and willfully with the intent to defraud." The

4    SEC disagrees, citing *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072 (9th Cir. 2010) and

5    *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–69 (9th Cir. 1990) (en banc), for the proposition

6    that "[i]n the Ninth Circuit the scienter element of a § 10(b) claim is knowing or reckless."

7            The parties have not provided, and the Court has not found, case law that discusses how to

8    instruct a jury in a civil prosecution by the SEC for insider trading based on a theory of

9    misappropriation.[2]   However, the Court does find guidance in the Supreme Court's discussion of the

10   misappropriation theory in the context of a criminal prosecution.  In *O'Hagan*,  the Supreme Court

11   explained that the prosecution in the case was for "misappropriat[ing] confidential information *for*

12   *securities trading purposes*," and approved of it on that limited basis. *See O'Hagan*, 521 U.S. at 652

13   (emphasis added).  Although in *O'Hagan* the fiduciary himself was also the trader—thus there was no

14   tipper and no tippee, and there was no need to discuss the level of knowledge the tipper needed

15   regarding  the  tippee's  intent—the  Supreme  Court's  discussion  makes  quite  clear  that  the

16   misappropriation theory is only viable where the "misappropriator's deceptive use of information [is]

17   'in connection with the purchase or sale of [a] security.'" *Id.* at 655.  This is because

18              The misappropriation theory targets information of a sort that misappropriators
19              ordinarily capitalize upon to gain no-risk profits through the purchase or sale of
                securities. Should a misappropriator put such information to other use, the statute's
20              prohibition would not be implicated. *The theory does not catch all conceivable forms of*
                *fraud involving confidential information; rather, it catches fraudulent means of*
21              *capitalizing on such information through securities transactions.*

22   *Id.* at 656 (emphasis added).

23           [2]     The closest case is *SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003).  In *Yun*, the trial court
24   had instructed the jury that the SEC needed to prove that the defendant acted with "severe recklessness,"
     and it denied the defendant's request for an instruction that she was motivated to tip for personal benefit.
25   *Id.* at 1282.  On appeal, the Eleventh Circuit stated that it had "little difficulty in concluding that the
     'severely reckless' instruction materially prejudiced the appellants such that they are entitled to a new
26   trial." *Id.* at 1282.  This was so *even though* the trial court had stated that the tip had to have been
     shared "for an improper purpose." *Id.* at 1282 & n.40 (emphasis omitted).
27           The opinion in *Yun* does not provide the Court with much guidance, however.  In that case, the
     recklessness instruction concerned defendant's behavior generally, and did not refer specifically to the
28   defendant's appreciation of what the tippee would do with the information.  Additionally, the opinion
     does not provide a detailed description of the rest of the jury instructions.

Thus, the SEC must prove that Mr. Gowrish not only misappropriated the information, but that he did so to "capitaliz[e] on such information through securities transactions."  As the SEC agrees, this means that the SEC must show that Mr. Gowrish intended to benefit himself.  It also means that his intent to benefit must be connected to securities transactions—either his own, or, as is the SEC's theory, someone else's.  This does not mean that Mr. Gowrish must have intended that the information be used in connection with securities transactions.  But it does mean that Mr. Gowrish must have known or expected – with the degree of scienter required in the Ninth Circuit – that Mr. Zaman would trade, or tip others to trade, on the basis of the information. Further, based on *Platforms Wireless* and *Hollinger*, this mental state could amount to recklessness.  The definition of "recklessly" is taken from those cases.

The Court disagrees with defendant that he is entitled to an instruction on a distinct element that he "acted knowingly and willfully with the intent to defraud."  If the jury finds that Mr. Gowrish knowingly provided material, non-public information in breach of his duty to TPG, with the knowledge or expectation, or recklessly disregarding, that it would be used for trading purposes, and with the intent to benefit personally, then the jury will necessarily have found that Mr. Gowrish acted with intent to defraud.  There is no need for instruction on a separate element.

**C.      Conclusion**

For the foregoing reasons, the Court intends to instruct on the elements of the alleged Securities and Exchange Act violation as follows:

In order for you to find Mr. Gowrish liable for tipping, the SEC must prove each of the following elements:

1.       Mr. Gowrish owed a fiduciary or other duty of trust, confidence, or confidentiality to his employer, TPG;

2.       Mr. Gowrish possessed material, non-public information regarding Sabre, TXU, or ADS as a result of his relationship with his employer, TPG;

3.      Mr. Gowrish knowingly provided this material, non-public information regarding Sabre, TXU, or ADS to another, in this case Adnan Zaman, in breach of his duty to TPG;

4.      Mr. Gowrish did so knowing, expecting or recklessly disregarding the fact that the Adnan Zaman would trade, or tip others to trade, securities in Sabre, TXU, or ADS on the basis of that information, through a national securities exchange or through the use of interstate commerce;

5.      A recipient of that information did use that information to trade securities in Sabre, TXU, or ADS through a national securities exchange or through the use of interstate commerce, while that information was both material and nonpublic, and while knowing that Mr. Gowrish provided the information in breach of his duty to TPG;

6.      Mr. Gowrish provided the information to Mr. Zaman with the intent to benefit himself, directly or indirectly.

The Court's proposed Instructions follow.

///

///

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is

1

intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof

2

1   of a fact does not necessarily depend on the number of witnesses who testify about it.

2            In considering the testimony of any witness, you may take into account:

3   (1) the opportunity and ability of the witness to see or hear or know the things testified to;

4   (2) the witness's memory;

5   (3) the witness's manner while testifying;

6   (4) the witness's interest in the outcome of the case and any bias or prejudice;

7   (5) whether other evidence contradicted the witness's testimony;

8   (6) the reasonableness of the witness's testimony in light of all the evidence; and

9   (7) any other factors that bear on believability.

10           The weight of the evidence as to a fact does not necessarily depend on the number of witnesses

11  who testify about it.

12

13                **BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

14           When a party has the burden of proof on any claim by a preponderance of the evidence, it means

15  you must be persuaded by the evidence that the claim is more probably true than not true.  You should

16  base your decision on all of the evidence, regardless of which party presented it.

17

18

19

20

21

22

23

24

25

26

27

28                                                3

## ESSENTIAL ELEMENTS OF CLAIM

I will now describe for you the civil offense of insider trading.

A person is liable for a violation of the securities laws if that person, in breach of a duty, provides material, nonpublic information to someone else so that the other person may buy or sell, or tip others to buy or sell, securities before the information becomes public.  The SEC claims that Mr. Gowrish is liable as a tipper for providing material, nonpublic information to Adnan Zaman.  In order for Mr. Gowrish to be found liable for tipping, the SEC must prove each of the following elements by a preponderance of the evidence:

1.      Mr. Gowrish owed a fiduciary or other duty of trust, confidence, or confidentiality to his employer, TPG;

2.      Mr. Gowrish possessed material, non-public information regarding Sabre, TXU, or ADS as a result of his relationship with his employer, TPG;

3.      Mr. Gowrish knowingly provided this material, non-public information regarding Sabre, TXU, or ADS to another, in this case Adnan Zaman, in breach of his duty to TPG;

4.      Mr. Gowrish did so knowing, expecting or recklessly disregarding the fact that Adnan Zaman would trade, or tip others to trade, securities in Sabre, TXU, or ADS on the basis of that information, through a national securities exchange or through the use of interstate commerce;

5.      A recipient of that information did use that information to trade securities in Sabre, TXU, or ADS through a national securities exchange or through the use of interstate commerce, while that information was both material and nonpublic, and while knowing that Mr. Gowrish provided the information in breach of his duty to TPG; and

4

6.     Mr. Gowrish provided the information to Mr. Zaman with the intent to benefit himself, directly or indirectly.

**SECURITY**

A "security" is commonly defined as a stock, bond, note, convertible debenture, option, warrant, or other document representing a share of stock in a company.  In this case, the "securities" involved are call options and stock of Sabre Holdings Corporation ("Sabre"), call options of TXU Corporation ("TXU"), and call options of Alliance Data Systems ("ADS").  During the relevant time period, the securities of Sabre, TXU, and ADS were traded on a national securities exchange.

**MATERIAL AND NON-PUBLIC – DEFINED**

Information is "material" if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision.  There must be a substantial likelihood that a reasonable investor would view the information as significantly altering the "total mix" of information available.  However, it is not necessary that the information be of such importance that it would cause an investor to change his or her mind about buying, selling, or holding stock.  Materiality may be affected by the probability that an event will occur and the anticipated magnitude of the effect of the event on the public company.  Statements of optimism or opinions are generally not material.

"Non-public information" is information which is not generally available to the public through such sources as press releases, trade publications, or other publicly available sources. Information is considered nonpublic for purposes of insider trading liability until such information has been effectively disseminated in a manner sufficient to insure its availability to the investing public.

## KNOWINGLY – DEFINED

An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident.  Proof of knowledge consists of showing an awareness of the underlying facts.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

## RECKLESSLY – DEFINED

To act "recklessly" means to act in a highly unreasonable manner that is an extreme departure from ordinary care, and in a manner that presents a danger that is either known to the defendant or is so obvious that the defendant must have been aware of it.

## PERSONAL BENEFIT – DEFINED

The SEC must prove that Mr. Gowrish expected to receive a personal benefit from providing material, nonpublic information to another person. A benefit includes anything of value, including money or friendship, and may be inferred from when an insider makes a gift of non-public information to a friend.

## "ON THE BASIS OF"

The SEC must establish by a preponderance of the evidence that a recipient of the information allegedly tipped by Mr. Gowrish, either Mr. Vaghar and Mr. Khoury, purchased or sold securities on the basis of the information they received from Mr. Gowrish.  The SEC need not prove, however, that Mr. Vaghar and Mr. Khoury  purchased or sold securities solely because of that information.  When

6

a person trades while in possession of material, nonpublic information, a strong inference arises that such information was used by that person in trading. However, that inference may be rebutted by evidence that there was no connection between the information the person possessed and the trade. That is, if you conclude that the same trades must have occurred regardless of whether Mr. Vaghar or Mr. Khoury possessed the material, nonpublic information, then you should find that they did not trade on the basis of that information.

## GOVERNMENTAL AGENCY AS PARTY

In this case, the plaintiff is the United States Securities and Exchange Commission ("SEC"). That agency is authorized by federal law, including the Securities Exchange Act of 1934, to bring a civil lawsuit in certain cases. The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.

## CONSIDERATION OF REMEDIES

The remedies provided by law for an insider trading claim brought by the SEC are for the court to decide. You may not consider remedies in deciding whether the SEC has proved its case against Mr. Gowrish by a preponderance of the evidence.

## CIVIL SETTLEMENTS OR CRIMINAL PLEA AGREEMENTS OF OTHER DEFENDANTS

Although other defendants in this action have settled with the SEC, it does not follow that if the other defendants have settled with the SEC, then Mr. Gowrish should settle with the SEC or be held

7

liable.  Similarly, although Mr. Zaman entered into a criminal plea agreement, this does not mean that Mr. Gowrish should settle with the SEC or be held liable.   Mr. Gowrish is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact that other defendants in this action have settled with the SEC and/or entered into criminal plea agreements.

## VIOLATION OF COMPANY POLICY

You have heard evidence regarding an insider trading policy of a company.  Whether or not information is material or non-public is a matter for you to decide based on the definitions I have given to you and is not controlled by any definitions of material or non-public which might be contained in a company policy.  A violation of a company policy may be considered by you, along with all the other evidence in the case, to determine whether the civil offense of insider trading has been proved.

8

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through Tracy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you

have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

10